**IN THE COURT OF APPEALS OF IOWA**

No. 22-0494
Filed January 11, 2023

**IN RE THE MARRIAGE OF STEPHANIE SUSAN DRURY
AND ALAN JAMES DRURY**

**Upon the Petition of
STEPHANIE SUSAN DRURY, n/k/a STEPHANIE SUSAN STARK,**
        Petitioner-Appellant,

**And Concerning
ALAN JAMES DRURY,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Dallas County, Randy V. Hefner,

Judge.


        Stephanie Stark appeals from the decree dissolving her marriage to Alan

Drury.  **AFFIRMED.**


        Katie L. Gallo and James R. Hinchliff of Shindler, Anderson, Goplerud &

Weese, P.C., West Des Moines, for appellant.

        Katie M. Naset and Stephen A. Neve of Hope Law Firm & Associates, P.C.,

West Des Moines, for appellee.


        Heard by Bower, C.J., and Vaitheswaran and Buller, JJ.

**BULLER, Judge.**

Stephanie Drury, now known as Stephanie Stark, appeals from the decree dissolving her marriage to Alan Drury. Stephanie raises a variety of complaints on appeal despite being awarded physical care of the children at trial and limited disagreement over the remaining items. We address Stephanie's specific challenges in turn below, none of which we find meritorious. Based on our finding that equity was done in this matter, and our recognition of Stephanie's false statements and obfuscation during the course of litigation, we affirm the dissolution decree and affirm the district court's award of attorney fees to Alan. We also order Stephanie to pay some, but not all, of the appellate attorney fees requested by Alan.

### I. Background Facts and Course of Proceedings

The parties married in July 2006. They entered into a prenuptial agreement that generally declared each party's sole property acquired before and during marriage remains their sole property and not subject to division in the event of dissolution. The marriage produced two children, born in 2008 and 2012.

During the marriage, Alan worked for the federal government. He was eventually promoted to a supervisory position, which he presently holds, that requires limited in-state travel. Alan also teaches college courses part-time. Stephanie briefly worked for a bank owned by her family, but she did not work outside the home for most of the marriage. By agreement, Stephanie was the children's primary caregiver during the marriage, and both parties credit and recognize her significant work in parenting the children. Alan was also an active

parent, as evidenced by him coaching youth baseball and assisting with homework.

Stephanie came into the marriage with significant personal wealth—a net worth of approximately $3.6 million dollars, according to her accounting in the prenuptial agreement. At that time, Alan reported a net worth of less than $60,000. Despite Stephanie's wealth, Alan was the primary source of the family's financial resources during the marriage.

By the end of the marriage, Stephanie's assets had appreciated significantly. She testified that her net worth was more than $6 million, but the district court found "the evidence strongly suggests that this substantially understates the value of her assets."[1] Stephanie's underestimation at trial is consistent with her behavior at the temporary-matters hearing, after which the district court found Stephanie's "claim of purported impoverishment is frankly spurious" and noted that her false claims were "likely sanctionable." For example, Stephanie and her agents claimed she was barely above the poverty line, even though she recently received hundreds of thousands of dollars in cash deposits. In contrast, Alan's net worth at dissolution was approximately $800,000—about $600,000 of which was held in retirement accounts. Alan also testified that the divorce litigation had "financially destroyed [him]" by consuming his savings and taking him into significant debt.

---

[1] In his appellate brief, Alan calculates Stephanie's assets as exceeding $13 million by relying on Stephanie's own witnesses. We need not resolve this dispute, except to note that we agree with the district court that it is clear Stephanie has undervalued her assets to some extent.

In terms of yearly income, Alan was generally limited to his $165,000-ish total salaries, and his primary financial goal has been saving due to a mandatory retirement age of fifty-seven. The parties disputed Stephanie's income throughout the litigation. In resolving the dispute for calculating child support, the district court (relying in part on expert testimony) determined Stephanie's average yearly income was more than $260,000.

The parties agree that, as the marriage deteriorated, they were involved in a number of heated arguments. But they do not agree on the specifics. Stephanie claims Alan assaulted her, and Alan claims Stephanie assaulted him. The district court did not find Stephanie's allegations credible, reasoning that the contemporaneous circumstances were inconsistent with Stephanie's subsequent allegations. Relatedly, the court specifically found that the evidence did not support finding a history of domestic abuse. The court did not make a finding either way regarding Stephanie assaulting Alan, but there is no evidence Alan feared for his physical safety due to physical contact with Stephanie.

The parties separated in October 2019, with Alan moving out of the marital home and into an apartment. In January 2020, Stephanie filed the petition for dissolution. In August, the district court entered a temporary order, which in part denied temporary spousal support and granted Alan visitation with the children every Wednesday evening and alternating weekends from Friday evening until Sunday evening. The parties testified they both intend to continue living in the Des Moines area after the dissolution.

In February 2021, the district court appointed a court and family reporter (CFR) and ordered Alan to pay the CFR's initial $2500 retainer. The CFR has a

substantial legal background in family law and juvenile cases, and her report to the court was based on a thorough investigation. The district court credited the CFR's testimony, which was consistent with the court's factual findings in the decree. The CFR recommended that Stephanie be awarded physical care and that Alan be awarded visitation on a 9–5 schedule during the school year and week-on-week-off during the summer. The CFR testified that she "wouldn't have concerns" about an 8–6 schedule (as requested by Alan), though it might take a period of adjustment by one or both of the children.

Following a four-day trial in January 2022, the district court entered a dissolution decree that:

- granted the parties joint legal custody of their children;

- placed physical care of the children with Stephanie;

- ordered an 8–6 parenting schedule, providing for eight overnights with Stephanie and six overnights with Alan every two weeks during the school year, and alternating weeks during the summer;

- established Alan's child support obligation;

- awarded the parties their sole property;

- ordered the marital home sold with the net proceeds divided equally;

- ordered Stephanie to pay Alan $30,000 for marital personal property in her possession;

- denied Stephanie's request for spousal support;

- ordered Stephanie to pay Alan $60,000 for trial attorney fees; and

- ordered payment of CFR fees and court costs.

Stephanie filed a post-trial motion asking the district court to equally divide the remaining CFR fees after Alan pays the initial $2500 retainer and to equally divide the cost of improvements to the marital home's heating, ventilation, and air conditioning system (HVAC) before selling the home. The court denied Stephanie's motion. Stephanie timely filed a notice of appeal and subsequently posted a $99,000 supersedeas bond to stay the judgment.

## II. Standard of Review

A dissolution-of-marriage proceeding is heard in equity, and we generally review the resulting dissolution decree de novo. *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015). "We give weight to the factual determinations made by the district court; however, their findings are not binding upon us." *Id.* "We will disturb the trial court's order only when there has been a failure to do equity." *Id.* (citation and internal quotation marks omitted).

## III. Parenting Schedule

At trial, the parties agreed to place physical care of the children with Stephanie. Stephanie proposed a slight increase in Alan's parenting time over the temporary order to four overnights every two weeks during the school year and five overnights every two weeks during the summer. She appeals the district court's parenting schedule providing Alan with six overnights of parenting time every two weeks during the school year and alternating weekends during the summer.

Under Iowa Code section 598.41(1)(a) (2020), a dissolution decree shall include

liberal visitation rights where appropriate, which will assure the child the opportunity for the maximum continuing physical and emotional contact with both parents after the parents have separated or dissolved the marriage, and which will encourage parents to share the rights and responsibilities of raising the child unless direct physical harm or significant emotional harm to the child, other children, or a parent is likely to result from such contact with one parent.

As with all issues of child custody and care, our primary concern is the best interests of the children. Iowa Code § 598.41(1)(a); Iowa R. App. P. 6.904(3)(o). "[G]enerally, liberal visitation rights are in the children's best interest." *In re Marriage of Stepp*, 485 N.W.2d 846, 849 (Iowa Ct. App. 1992).

Stephanie advances several arguments for why she is, in her view, the better parent. Her arguments support the district court's decision to place physical care with her, but they do not support limiting Alan's parenting time as she requests. Stephanie indeed stayed home with the children during marriage while Alan focused on his career, but the record shows Alan was involved in the children's lives when he was not working, particularly through athletics and extracurriculars. In any event, that one parent did not work outside the home is not independently sufficient to justify reducing the parenting time of the gainfully employed parent.

Stephanie also argues Alan has a temper with the children and uses foul language. To the extent Stephanie claims Alan physically abused her and the children, it is not our role to second-guess the credibility findings of the district court. While we may have credited some of Stephanie's testimony more than the district court did, we understand the district court's hesitancy in doing so due to Stephanie's dishonesty, her manipulative behavior discussed elsewhere in this

opinion, and her failure to disclose the alleged abuse to the police, the Iowa Department of Health and Human Services, or the court at the temporary-matters hearing. We also accept the CFR's testimony that the CFR has never had any concerns about the children's physical safety. And, finally, we recognize that the CFR asked the children if they ever witnessed physical violence between Stephanie and Alan, and the children told her they had not.

Stephanie also provided recordings of Alan saying hurtful things to the children. These recordings clearly reflect poorly on Alan, which he admitted and took responsibility for at trial. However, we also join the district court in condemning Stephanie's behavior in surreptitiously recording the children (or encouraging them to surreptitiously record Alan), seemingly after manipulation or prompting by her. We have little doubt that, in her bid to manufacture evidence for the divorce case, Stephanie inflicted further harm on the children and their future relationship with one or both parents. Like the district court, we are troubled by both parties' conduct. And also like the district court, we give some weight to the fact that Alan has acknowledged his bad behavior while Stephanie has not.

In the same vein as her conduct with the recordings, Stephanie also manipulated the children with regard to the CFR. The district court found that, after Stephanie was unhappy with the CFR's recommendations, she arranged another meeting between the CFR and the children—after the report was issued but before trial—with "the rather obvious purpose of trying to convince [the CFR] to change the recommendations in her report." Stephanie, to some extent, admitted to this conduct at trial. The district court found that at least one of the children understood the purpose of this additional meeting and was "coached [by Stephanie] to request

that the temporary matters schedule should continue." This finding is also consistent with other manipulative behavior by Stephanie documented in the record, including blackmail threats directed at Alan and Alan's then-girlfriend, through which Stephanie attempted to coerce Alan into complying with her demands about custody and finances. We observe, like the district court, that Stephanie's behavior undermines the assertions she makes regarding her fitness as a parent.

On our de novo review, we do not see any failure to do equity or further the best interests of the children in the district court's parenting order. It is clear that both Stephanie and Alan can be suitable parents when the toxicity of their interpersonal disagreements are set aside. The CFR credibly recommended the week-on/week-off summer schedule, and we agree with the district court following that recommendation. The more difficult question was a 9–5 or 8–6 schedule during the school year. But the difference between these schedules—and even the 10–4 schedule Stephanie requests—is not vast, and Stephanie herself admits that Alan "should have more time" with the children. The district court accepted Alan's request in part to help him establish a routine with the children and foster stability, which is a sensible goal given that both parents have the capacity to care for the children and purport to share an interest in seeing the children succeed. The district court also delayed the increase in Alan's parenting time, beginning the 7–7 schedule in summer 2022 and the 8–6 schedule during the 2022–2023 school year. The district court reasoned that the delay was in the children's best interests, by not fully increasing Alan's school-year visitation until the children had spent half

of the summer with him and grown more accustomed to the arrangement. We see no fault in this logic.

Contrary to Stephanie's arguments on appeal, the district court's reasoning is not in conflict with Iowa case law and is instead consistent with the statutory factors. *See* Iowa Code § 598.41(1). As our supreme court has held, "Visitation time varies widely and can even approach an amount almost equal to the time spent with the caretaker parent." *In re Marriage of Hynick*, 727 N.W.2d 575, 579 (Iowa 2007). In addition, "When the court grants physical care to one parent, it should provide liberal visitation to the other parent to 'assure the child the opportunity for the maximum continuing physical and emotional contact with both parents.'" *In re Marriage of Gifford*, No. 19-1569, 2020 WL 7021760, at *2 (Iowa Ct. App. Nov. 30, 2020) (quoting Iowa Code § 598.41(1)(a)). The district court's ruling is consistent with these authorities. Given the district court's advantaged position to review the evidence and evaluate the credibility of witnesses, we have no reason to disturb the parenting schedule, we find the ruling serves the best interests of the children, and we affirm.

## IV. Personal Property

Stephanie next contests the distribution of personal property and valuation of the same. "Valuation is difficult and trial courts are given considerable leeway in resolving disputes as to valuations." *In re Marriage of Shanks*, 805 N.W.2d 175, 177 (Iowa Ct. App. 2011). "Ordinarily, a trial court's valuation will not be disturbed when it is within the range of permissible evidence." *In re Marriage of Hansen*, 733 N.W.2d 683, 703 (Iowa 2007). "Although our review is de novo, we ordinarily

defer to the trial court when valuations are accompanied by supporting credibility findings or corroborating evidence." *Id.*

At trial, Alan testified Stephanie has $60,000 worth of marital personal property in her possession in the marital home. Specifically, Alan identified a list of valuable items, including a hot tub, basketball hoop, cooking table, patio and indoor furniture, a fire pit, electronics (including multiple televisions), wedding gifts, appliances (including deep freezes), tools, and equipment like lawnmowers and snowblowers. Stephanie did not directly contest this valuation at trial, but she did request that the parties retain all personal property presently in their physical possession. The district court agreed with Alan's valuation and awarded the property to Stephanie with an obligation to pay Alan $30,000 for his share.

On appeal, Stephanie disputes the value of this property and asserts legal error by the district court in accepting Alan's valuation. Given the extensive list of property Alan described at trial, this property is within the permissible range of valuation. To the extent Stephanie argues some pieces of property are fixtures that should be accounted for when selling the home, and assuming she adequately preserved this error, there is no evidence in the record establishing that any of this property is a fixture or that any specific offset should be applied. To the extent Stephanie argues some of this property was a gift to her, Alan testified any gifts were to both of them jointly. The district court accepted Alan's testimony, and we place weight on this finding. *See Gust*, 858 N.W.2d at 406.

Finally, to the extent Stephanie urges that $5000 is the appropriate valuation—not $30,000—she did not develop this claim below. "Nothing is more basic in the law of appeal and error than the axiom that a party cannot sing a song

to us that was not first sung in trial court." *State v. Rutledge*, 600 N.W.2d 324, 325 (Iowa 1999). We find Stephanie did not preserve error on this claim regarding the valuation. We also conclude that, even if she had preserved error, the record evidence does not support her $5000 figure. Stephanie did not offer any valuation evidence regarding the property in the house, let alone a valuation that supports the $5000 figure she advances for the first time on appeal. We affirm the personal-property award.

### V. Attorney Fees

At trial, Alan claimed $74,311.60 in attorney fees and $8847.90 in expert witness fees. The district court awarded him $60,000 in attorney fees, which Stephanie contests on appeal. We review an award of attorney fees for abuse of discretion. *In re Marriage of Wessels*, 542 N.W.2d 486, 491 (Iowa 1995).

Our court previously recognized that a spouse's attempt to obfuscate marital assets, and the resulting costs incurred by the other party to discover and untangle the same, can justify an award of attorney fees. *In re Marriage of Lenz*, No. 05-0997, 2006 WL 782712, at *6 (Iowa Ct. App. Mar. 29, 2006). The district court reasonably applied our case law given Stephanie's considerable assets and the lack of merit to her spousal-support claim (which she abandoned on appeal).

The district court correctly found that Alan's attorney fees were incurred "to a large degree" because of Stephanie's unpersuasive (if not frivolous) spousal-support claim, which injected a morass of financial complexity into the proceedings. The complexity was made more difficult for Alan because, per the district court's findings, Stephanie materially understated her assets and income in such a manner that it was "likely sanctionable." At trial, the court inquired of

both parties whether questions about Stephanie's assets were relevant only to the spousal-support issue, and both attorneys answered in the affirmative. The litigation of this issue necessitated two motions to compel from Alan, additional depositions, substantial independent investigation, and the hiring of an expert witness to decipher Stephanie's business entanglements. Despite admonishment from the district court early in the proceedings regarding her dishonesty, Stephanie made no less than six different claims regarding her income during the life of the case, ranging from $0.00 (which she claimed twice in court documents) to $165,999.96 (which she claimed in a credit-card application). By the time of trial, Stephanie admitted to hundreds of thousands of dollars being deposited into her bank accounts as distributions contemporaneous with those assertions, but she still refused to accept responsibility for her prior false statements. Some of Stephanie's agents also made false statements, including representations that a trust was not revocable when in fact it was. The record also includes multiple examples of Stephanie's evasiveness or non-cooperation regarding her personal possessions.

Though we might disagree slightly with the figure if we were writing on a blank slate, we discern no abuse of discretion in the award of $60,000 to Alan in attorney fees and litigation expenses. Prevailing in the district court is a prerequisite for assessing attorney fees, and Alan prevailed on all or nearly all of the issues contested at trial. *See* Iowa Code § 598.36; *In re Marriage of McCurnin*, 681 N.W.2d 322, 332 (Iowa 2004). We note also that Alan requested a total of $83,159.50 and received only about three-quarters that amount. We affirm the award.

## VI. CFR Fees

Stephanie argues Alan should be solely responsible for the $2500 retainer paid to the CFR and the parties should evenly divide the remaining CFR fees. Although there is a dispute between the parties as to whether Stephanie adequately preserved this issue in the district court,[2] we elect to bypass that concern because the responsibility for CFR fees is controlled by the Iowa Code and was ruled on (at least implicitly) by the district court when it ordered payment. The Code provides:

> The court shall enter an order in favor of the child custody investigator or child and family reporter for fees and disbursements, and the amount shall be charged against the party responsible for court costs unless the court determines that the party responsible for court costs is indigent, in which event the amount shall be borne by the county.

Iowa Code § 598.12B(3). This language does not allow the court to divide CFR fees as Stephanie requests. *Cf. In re Marriage of Blessing*, 220 N.W.2d 599, 606 (Iowa 1974) (analyzing similar statutory language for a guardian ad litem (GAL), and concluding the GAL's fees are assessed to the party responsible for court costs); *In re Marriage of Bates*, No. 11-1293, 2012 WL 1440340, at *8 (Iowa Ct.

---

[2] Stephanie's reply brief correctly notes that Alan's brief does not comply with the rules of appellate procedure insofar as the argument section of "each issue" or "[e]ach division" must include a separate statement addressing error preservation. *See* Iowa R. App. P. 6.903(2)(g)(1). Alan's brief instead intermingles the error-preservation and merits discussions. While this rules violation inconveniences our review, it does not inhibit us from addressing the merits, and Stephanie asks for no relief on this basis. *See State v. Lange*, 831 N.W.2d 844, 847 (Iowa Ct. App. 2013) ("[T]his court's principal role is to dispose justly of a high volume of cases. A party's noncompliance with the rules of procedure hinders our effort to meet this mandate." (internal citation and footnote omitted)). We encourage counsel in future cases to abide by the rules and separately address error preservation for each issue or division. This enables both opposing counsel and the reviewing court to concisely address the issues presented.

App. Apr. 25, 2012) (same). We reject Stephanie's request to divide the CFR fees, and we affirm the district court on this ground.

## VII. Improvements to the Marital Home

Stephanie requests a division of the costs for improvements to the marital home's HVAC before its sale. Alan contests error preservation on this issue, but we conclude it is minimally preserved because Stephanie's written closing argument identified "a contributory valuation increase [of] $1,000 to $3,000 for the substantial expense incurred by Stephanie to install a new HVAC." In any event, Stephanie's claim fails for at least two reasons. First, it is contrary to the prenuptial agreement, which requires marital property to be sold and the net proceeds evenly divided if the parties cannot agree. Stephanie's own testimony at trial acknowledged this provision and, at that time, she apparently wished to abide by it. Second, the record does not contain substantial evidence regarding these improvements, such as whether they were necessary or even advisable before selling the home. We reject Stephanie's request to divide the cost of improvements to the marital home. To the extent Stephanie also requests a remand on this issue, rather than reversal, we deny that request too.

## VIII. Appellate Attorney Fees

Alan requests appellate attorney fees. "An award of attorney fees on appeal is not a matter of right, but rests within the court's discretion and the parties' financial position." *In re Marriage of Gonzalez*, 561 N.W.2d 94, 99 (Iowa Ct. App. 1997); *see also* Iowa Code § 598.36. We specifically "consider the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013)

(citation and internal quotation marks omitted). We also consider whether the requesting party was obligated to defend the trial court's decision on appeal. *In re Marriage of Maher*, 596 N.W.2d 561, 568 (Iowa 1999).

These factors do not provide an easy answer regarding appellate fees. While Alan testified credibly that he had to borrow money to cover the cost of litigation, he earns a six-figure salary. On the other hand, Stephanie clearly has a greater ability to pay, given her multimillion-dollar business assets and six-figure passive income stream. Importantly, Alan also prevailed on appeal and was obligated to defend the trial court's decision, including a defense of the quite substantial attorney-fee award ordered by the district court. Finally, we agree with Alan that significant expenses and complication were added to the trial and appeal by Stephanie taking inconsistent—and at times irreconcilable—positions regarding the prenuptial agreement, essentially arguing that it should apply when favorable to her and should not apply when favorable to Alan. In weighing these considerations, we find a partial award of appellate fees appropriate. We order Stephanie to pay $6850 in Alan's appellate attorney fees. The basis for this award is the approximate fees requested for drafting the proof and final brief in this matter and for oral argument, discounted to reflect the rules violations alleged by Stephanie and previously noted in this opinion.

## IX. Conclusion

We conclude Stephanie has not shown that the decree was inequitable, and we find the parenting schedule is in the best interests of the children. We find that Alan attorney's fees were incurred in part due to Stephanie's false statements and obfuscation regarding her assets and therefore affirm the fee award at trial and

order appellate fees as set forth in this opinion.  We reject all other arguments presented and affirm the dissolution decree in its entirety.  Costs on appeal are assessed to Stephanie.

**AFFIRMED.**