# IN THE COURT OF APPEALS OF IOWA

No. 22-1201
Filed November 8, 2023

IN RE THE MARRIAGE OF JOLEEN KAY BOLGER
AND ALAN THOMAS BOLGER

Upon the Petition of
**JOLEEN KAY BOLGER,**
     Petitioner-Appellant,

**And Concerning**
**ALAN THOMAS BOLGER,**
     Respondent-Appellee.

_____

     Appeal from the Iowa District Court for Polk County, Lawrence P. McLellan, Judge.

     A party to a marriage dissolution appeals the financial provisions of the decree. **AFFIRMED.**

     Kimberley K. Baer and Jane M. Brennan of Baer Law Office, Des Moines, for appellant.

     Katie M. Naset of Hope Law Firm & Associates, P.C., West Des Moines, for appellee.

     Considered by Schumacher, P.J., and Chicchelly and Buller, JJ.

**BULLER, Judge.**

Joleen Bolger appeals a decree dissolving her marriage to Alan Bolger. Joleen argues the district court erred in five ways. First, she disagrees with the court's use of her Thrift Savings Plan (TSP) to equalize the property distribution. Second, she claims the court should have awarded her the first $250,000 of the TSP. Third, she disputes the court's valuation of personal property. Fourth, she asserts the court erred in not using the *In re Marriage of Benson*, 545 N.W.2d 252 (Iowa 1996) formula to value and divide her TSP. And finally, she maintains the court abused its discretion in excluding her expert witness as a sanction for discovery violations. Alan counters each of Joleen's arguments and requests appellate attorney fees. We affirm but decline to award attorney fees.

## I.     Background Facts and Proceedings

Joleen and Alan married each other twice. The pair first married in 2000 and divorced in 2003. But a couple of months later, they reconciled and remarried. They stayed together until Joleen petitioned for dissolution in 2020.

At the time of trial in 2021, Joleen was sixty years old. She was diagnosed with stage IV pancreatic cancer and on sick leave from her job at the United States Postal Service (USPS). At USPS, she worked full time, earning $98,314 per year. Her benefits included a Federal Employees Retirement System (FERS) defined-benefit pension and the ability to invest in a defined-contribution TSP.

When Joleen married Alan in 2003, the balance in her TSP was $31,213.54; when she filed for divorce, the balance was $585,059; and as of trial, $755,944. She also receives $2545 per month in social security disability (SSDI) benefits,

and she will receive $1805 per month in FERS benefits upon retirement after exhausting her leave. These benefits combine for a total of $4350 per month.

Alan was seventy-six years old at trial. He drew $1556.41 per month from his Iowa Public Employees' Retirement System (IPERS) defined-benefit pension, and he received $1764.50 per month in social security (SSI) income. Alan had been retired from full-time work for nearly a decade but worked part-time for roughly $975 per month gross. His total monthly income was about $4295.

The parties disputed the division of personal property, including vehicles, heavy equipment, and tools. As to the vehicles and heavy equipment, Joleen relied on private-party sales to value them at $88,669. Alan relied more on trade-in values and what he believed them to be worth, pricing them at $56,900. For the tools and equipment, Joleen estimated their value at $60,000, and Alan estimated $8,000 or less were purchased during the marriage.

Shortly before trial, the district court excluded Joleen's expert witness as a sanction for her failure to file a timely and adequate designation as required by the rules of civil procedure. Following trial, the district court credited Joleen with the $31,213 in premarital contributions made to her TSP and set values in-between the parties' requests for the vehicles and heavy equipment ($67,442) and tools ($10,000). After the court entered its ruling, Joleen filed an Iowa Rule of Civil Procedure 1.904(2) motion requesting the court award her a higher percentage of the TSP, and at the related hearing, she asked for the first time that the court use the *Benson* formula to divide the TSP.

As relevant to this appeal, the district court denied the substance of Joleen's post-trial motion. Joleen appealed. After she filed her notice of appeal, but before

the parties concluded briefing, Joleen requested the district court use Iowa Rule of Appellate Procedure 6.806 to settle the evidence concerning an unreported hearing. The district court rejected Joleen's statement of the evidence and reiterated its prior finding that "the parties agreed [the TSP] was not subject to a *Benson* formula division."

## II. Standard of Review

In dissolution of marriage cases, our review is de novo. *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015). "We give weight to the factual determinations made by the district court; however, their findings are not binding upon [this court]." *Id.*

When it comes to property, "Iowa is an equitable distribution state." *In re Marriage of Sullins*, 715 N.W.2d 242, 247 (Iowa 2006). "This 'means that courts divide the property of the parties at the time of divorce, except any property excluded from the divisible estate as separate property, in an equitable manner in light of the particular circumstances of the parties.'" *Id.* (citation omitted). We divide the marital property equitably based on the applicable factors contained in Iowa Code section 598.21(5) (2020). *See In re Marriage of McDermott*, 827 N.W.2d 671, 678 (Iowa 2013).

We review a district court's exclusion of expert testimony for an abuse of discretion. *Mengwasser v. Comito*, 970 N.W.2d 875, 881 (Iowa 2022). Specific to the expert-disclosure rule, "we accord trial courts almost unfettered discretion in sorting through disputes." *Klein v. Chicago Cent. & Pac. R.R.*, 596 N.W.2d 58, 62 (Iowa 1999). To the extent the exclusion of expert testimony turned on

interpretation of the rules of civil procedure, we review for correction of errors at law. *Mengwasser*, 970 N.W.2d at 881.

### III. Discussion

Joleen advances five arguments on appeal. She challenges the division of the TSP to equalize the award of personal property; the denial of her request to award her the first $250,000 of the TSP; the valuation of personal property; the denial of her alleged post-trial request to use the *Benson* formula; and the exclusion of her expert witness as a discovery sanction. In response, Alan requests appellate attorney fees. We address each claim below.

### A. Tax Consequences for Pre- or Post-Tax TSP Withdrawals

Joleen's first argument is that the district court should not have used her TSP as the source for equalization. She relatedly maintains that the equalization payment should have been made from the post-tax (Roth) portion of her TSP rather than the pre-tax portion. The underpinnings of these arguments are that Joleen claims she will suffer tax consequences from withdrawing pre-tax dollars and that withdrawal from the post-tax portion could instead minimize tax consequences and establish "a dollar-for-dollar offset and equal value award" for the equalization payment.

The tax-consequence argument has some appeal at first blush, as there could potentially be a significant impact to Joleen based on whether she had to withdraw pre- or post-tax dollars. *See* Iowa Code § 598.21(5)(j) (requiring courts to consider tax consequences when dividing marital property). The problem with Joleen's claim, and one reason the district court rejected it, is that "Joleen presented no evidence at trial" or in her motion to enlarge and amend that

established, as a factual matter, that she would actually suffer any adverse tax consequences. Her appellate brief similarly does not point to anywhere in the record these tax consequences were proven, and we are not convinced the assertions in Joleen's brief are entirely correct when the transfer is by retirement benefits court order. We are aware Joleen's expected tax burden in retirement might affect this analysis. And while we could speculate as to the tax consequences of the equalization payment flowing from the pre- or post-tax retirement accounts, to do so would require us to assume a partisan role or look outside the record. This we cannot do. *See King v. State*, 818 N.W.2d 1, 11–12 (Iowa 2012); *Inghram v. Dairyland Mut. Ins. Co.*, 215 N.W.2d 239, 240 (Iowa 1974).

We recognize this deficiency in the record could be caused in part by exclusion of Joleen's expert witness as a discovery sanction, as discussed later in this opinion. But that is a self-inflicted wound, and Joleen is owed no relief for a deficiency in the record causally linked to her discovery violations. Joleen's claims regarding tax consequences are not supported by the record, and we cannot grant relief based on speculation. We affirm the district court's use of the TSP for equalization.

**B. The First $250,000 of Joleen's TSP**

Joleen next contends that she should have been awarded the first $250,000 of her TSP before any division. She asserts the district court erred in ignoring her failing health, forced retirement, and premarital contributions.

Contrary to Joleen's claim, we find no reason to disturb the division of this particular asset. Tellingly, Joleen's testimony at trial as to why she believed she was entitled to the first $250,000 does not track the rationale she offers now on

appeal. Joleen testified that she believed she deserved a disproportionate share of marital assets because she was the higher earner—she "worked hard to earn that money" and thought she should get to keep it. We are required to consider each party's contributions to the marriage, both financial and non-financial. *See* Iowa Code § 598.21(5)(c). We do not and cannot accept Joleen's bright-line keep-what-I-earned mentality for assets acquired during the marriage.

We also reject Joleen's challenge because the overall property distribution does not reveal a failure to do equity. Both parties are advancing in years, and the record does not reflect that Joleen is unprepared for the financial consequences attendant to her health concerns. In terms of resources going forward, Joleen's monthly retirement income is anticipated to be slightly higher than Alan's, even considering his current part-time work. We also note Joleen received premarital assets in the form of nearly $24,000 in an Individual Retirement Account (IRA) and approximately $31,000 in premarital contributions to her TSP; these were proper awards and reflect that Joleen earned these assets on her own rather than through the joint venture of marriage. We affirm.

### C. Valuation of Personal Property

Joleen also disputes the value of various personal property awarded to Alan, including vehicles, tools, and equipment. "Valuation [of property] is difficult and trial courts are given considerable leeway in resolving disputes to valuations." *In re Marriage of Shanks*, 805 N.W.2d 175, 177 (Iowa Ct. App. 2011). "We will not disturb the district court's valuation of assets if it is within a permissible range of the evidence." *Id.*

First, as to the vehicles and heavy equipment, both Joleen's values (grounded in private-party sales) and Alan's values (grounded in trade-in values and purchase prices) were reasonable. We recognize vehicle valuation is part art rather than pure science. It is not our role to re-weigh the impact of valuation variables like vehicle condition and mileage; that role is entrusted to the district court as factfinder, so long as its valuation is within the permissible range of evidence. *Id.* We find the district court acted within its leeway in resolving the dispute, and we decline to tinker with the court's findings.

Second, as to the tools and equipment, the parties were far apart in their valuations. Joleen valued the tools around $60,000 and Alan around $8000. On one hand, there are some ambiguities in Alan's testimony and valuations. But on the other, Joleen's "inventory" of tools is more than 200 unorganized photographs, and it is not clear whether all the photos reflect marital or premarital property. Neither party offered expert testimony or an appraisal, and the district court was tasked with resolving this gulf between valuations on a limited factual record. We cannot say the district court acted unreasonably when it landed on a $10,000 valuation.

We affirm the overall valuation of personal property as within the permissible range of evidence.

**D. Use of the *Benson* Formula**

Joleen next claims the district court erred in refusing to use the *Benson* formula in calculating the division of the TSP. By way of explanation, the *Benson* formula addresses the division of retirement benefits accrued during a marriage in

a retirement plan—typically a defined-benefit plan like a pension. *See* 545 N.W.2d at 255–58. Joleen argues the district court should have applied this formula.

Alan contests error preservation. We find Joleen did not advance any version of this argument below until, at the earliest, her post-trial rule 1.904(2) motion and hearing. But a post-trial motion is too late to preserve a claim that should have been raised at trial. *See Winger Contracting Co. v. Cargill, Inc.*, 926 N.W.2d 526, 543 (Iowa 2019). Joleen contends in her reply brief that her request at trial for a greater share of the TSP preserved the *Benson* claim, but we are not persuaded. As noted above, Joleen's trial testimony was essentially that she thought she worked harder than Alan to earn the money and deserved to keep it. Not even a generous reading of Joleen's testimony placed the *Benson* formula before the district court. We will not fault the district court for not addressing an issue that was not properly and timely raised.

If we did not dispose of this issue on error-preservation grounds, we would then need to confront the question of waiver. After proposed orders on the post-trial motion were filed, an unreported hearing was held on June 17, 2022, to address questions from the court. Because the hearing was not reported, Joleen's appellate attorney (who was not her trial attorney) filed a statement of proceedings pursuant to Iowa Rule of Appellate Procedure 6.806, urging that Joleen's position after trial was that the *Benson* formula should be used to divide the TSP. Alan resisted, though no written resistance appears in our record on appeal. The district court settled the statements of proceedings and reiterated its finding in a prior order that "the parties agreed it [the TSP] was not subject to a *Benson* formula division."

We are bound by the district court's settlement of the evidence and, for our purposes, it reflects the final legal positions of the parties. Although there could be some debate over the exact form of waiver at issue here, we are convinced Joleen's attempt to change horses mid-stream bars relief on appeal. *See Clark v. Est. of Rice*, 653 N.W.2d 166, 172 (Iowa 2002) (holding appellant was foreclosed from changing theory of liability on appeal); *McCracken v. Edward D. Jones & Co.*, 445 N.W.2d 375, 378–79 (Iowa Ct. App. 1989) ("Under the Doctrine of Invited Error, it is elementary a litigant cannot complain of error which he has invited or to which he has assented."); *Vennerberg Farms, Inc. v. IGF Ins. Co.*, 405 N.W.2d 810, 814 (Iowa 1987) (discussing judicial estoppel). Joleen's final legal position below, as captured in the rule-6.806 settlement of evidence, was that the *Benson* formula did not apply, and she cannot argue otherwise now.

Even if Joleen had timely requested application of the *Benson* formula and had not waived the claim, we note that our courts generally have not applied the *Benson* formula to defined-contribution plans (like a TSP), typically reserving the formula only for defined-benefit plans (like FERS and IPERS pensions). *See Benson*, 545 N.W.2d at 256 n.1 ("[I]t may be more appropriate to divide and distribute defined contribution plans under the present-value method."). Even if Joleen had timely requested application of the *Benson* formula and had not waived the claim, we would find nothing inequitable about the district court's decision to utilize the present-value method and a percentage-based division. *See In re Marriage Sigwalt*, No. 13-0877, 2014 WL 2341995, at *6 (Iowa Ct. App. May 29, 2014) (coming to a similar conclusion).

### E. Untimely Expert Witness Disclosure

Joleen's final contention is that the district court abused its discretion when it excluded her expert witness as a sanction for untimely disclosure. On our review, we see no abuse of discretion. It is undisputed Joleen filed her designation late. Perhaps more importantly, the designation lacked material elements required by the rules, including any substance that could reasonably be described as an expert "report." Iowa R. Civ. P. 1.500(2)(b). The designation included an attached spreadsheet, which the district court noted had no "information as to how [the expert] reached his conclusions or any documents he may have relied upon." We agree with the district court this filing "did not comply with the rule in any respect." This combination of untimely designation and material deficiencies could end the analysis.

But we go a step further and affirmatively reject Joleen's argument that she should be excused from her obligations under the rules because Alan could have inferred that she intended to call an expert based on her position regarding the TSP. If the expert-disclosure requirements fell away every time a party could infer the likely use of an expert from a party's legal position, the rule would have little applicability in most civil litigation and no real teeth as an enforcement mechanism. We also generally agree with Alan's observation that, absent a disclosure complying with the rules, he would be hamstrung in his attempt to prepare his own expert or lay testimony to rebut Joleen's arguments. Our rules of civil procedure do not countenance "trials by ambush," and we find the discovery sanction was appropriate under the facts of this case. *Cf. State ex rel. Hager v. Carriers Ins. Co.*, 440 N.W.2d 386, 389 (Iowa 1989).

### F.  Appellate Attorney Fees

Alan requests appellate attorney fees.  Appellate attorney fees are not a matter of right but are instead awarded in our discretion.  *McDermott*, 827 N.W.2d at 687.  In determining whether to exercise our discretion, "we consider the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal."  *Id.* (internal quotation marks and citation omitted).  We think both parties can afford their own attorney fees, and Alan has not identified a need for an award.  We deny his request.

In the final sentence of argument in her reply brief, Joleen appears to request that Alan pay her appellate attorney fees.  We deny her request.  *See Young v. Gregg*, 480 N.W.2d 75, 78 (Iowa 1992) (arguments raised for first time in reply brief cannot be considered).

### IV.    Disposition

We reject Joleen's arguments on appeal, affirm the district court's decree, and deny Alan's request for appellate attorney fees.

**AFFIRMED.**