In re The MARRIAGE OF Randall J. SHANKS and Teresa E. Shanks.

Upon the Petition of Randall J. Shanks, Petitioner–Appellant/Cross–Appellee,

and

Concerning Teresa E. Shanks, n/k/a Teresa E. Milner, Respondent–Appellee/Cross–Appellant.

No. 09–1267.

Court of Appeals of Iowa.

July 13, 2011.

John M. French of the Law Offices of John M. French, Council Bluffs, for appellant.

William T. Early, Harlan, for appellee.

Considered by SACKETT, C.J., and DOYLE and DANILSON, JJ.

SACKETT, C.J.

Randall J. Shanks appeals and Teresa E. Shanks cross-appeals from a July 24, 2009, order dividing property and establishing alimony. Randall and Teresa contend the property division is contrary to the provisions of a premarital agreement. Randall contends the alimony and attorney fee awards to Teresa are not equitable. We affirm as modified.

**BACKGROUND.** Randall and Teresa were married in Jamaica on April 23, 1998.

1. Judge Ronald Schechtman ruled on the premarital agreement; Judge Joel Swanson on the property division.

2. The court noted the IUPAA is modeled after the Uniform Premarital Agreement Act

This was a second marriage for both parties. They executed a premarital agreement ten days before their marriage. On November 23, 2004, Randall filed a petition seeking dissolution of the marriage. He requested, among other things, that the district court order specific performance of the parties' premarital agreement. Teresa contended the agreement should not be enforced. Trial was bifurcated and the first portion addressed the validity of the premarital agreement and the district court denied enforcement of it. In the second trial the district court addressed division of property, alimony, and attorney fees. Appeal was taken to the supreme court from the findings of both judges.[1] The case was transferred to this court and on March 14, 2007, we affirmed both decisions in an unpublished decision. *In re Marriage of Shanks,* No. 06–0557, 2007 WL 750643 (Iowa Ct.App. Mar. 14, 2007).

Randall sought further review which the supreme court granted. On December 12, 2008, that court filed a decision. *In re Marriage of Shanks,* 758 N.W.2d 506 (Iowa 2008). The court noted that premarital agreements executed on or after January 1, 1992, are subject to the requirement of the Iowa Uniform Premarital Agreement Act (IUPAA) codified in Iowa Code chapter 596.[2] *Id.* at 511. The court concluded the premarital agreement was voluntarily executed, conscionable, and enforceable. *Id.* at 512–19. It affirmed the dissolution of the marriage, vacated our decision, affirmed in part and reversed in part the district court, and remand to the district court for further proceedings consistent with its opinion. *Id.* at 519.

(UPAA) drafted by the National Conference of Commissioners on Uniform State Laws in 1983 and a primary goal of the UPAA was to increase certainty of enforceability of premarital agreements. *Shanks,* 758 N.W.2d at 512.

The matter returned to the district court. It came on for trial on May 13, 2009. On July 29, 2009, the district court filed its order. It recognized the premarital agreement and divided the parties' equities according to what it determined were its terms. It also fixed alimony for Teresa, fixed costs, and required Randall to pay additional attorney fees. On August 19, 2009, Randall filed a notice of appeal. Teresa cross-appealed. The matter was transferred to this court.

**SCOPE OF REVIEW.** Dissolution proceedings are equitable actions that we review de novo. Iowa R.App. P. 6.4. Premarital agreements are construed in the same manner as ordinary contracts. *In re Marriage of Spiegel,* 553 N.W.2d 309, 316 (Iowa 1996) (superseded by statute as recognized by *Shanks,* 758 N.W.2d at 510–11).

**DIVISION OF PROPERTY.** Both parties challenge the property division made by the district court. Randall challenges the valuation and division of joint property. Teresa argues that she should have twenty percent of the proceeds from the sale of the parties' marital residence.

**A. Joint Property.** The premarital agreement provided that Teresa be entitled to fifteen percent of the property purchased by the parties with funds from their joint checking account if the marriage lasted more than five and less than ten years. The marriage lasted six and one-half years. The district court valued property purchased jointly at $80,370.15 and determined fifteen percent of this property was $12,056. The court found Teresa had received joint property worth $33,160. The court required her to reimburse Randall in the amount of $21,104.

Randall contends that the jointly owned property was valued at $67,015 and Teresa's fifteen percent of that amount should be $10,052.25. He also contends that Teresa had jointly owned property in her possession worth $47,472.75, so Teresa should reimburse him in the amount of $37,472.75. Randall contends Teresa came into the marriage with $27,850 in assets and the district court decision means she leaves the marriage with $99,457.64 in assets, a 257% increase in value. Teresa contends the district court correctly valued the parties' joint assets.

The dispute on this issue focuses mainly on values placed by the district on property it considered jointly owned, on whether jewelry should be considered joint property or be treated as a gift, and on whether Teresa should be charged with funds she took from Randall's office account to pay for repairs of her daughter's car prior to separation.

█ Valuation is difficult and trial courts are given considerable leeway in resolving disputes as to valuations. *See In re Marriage of Dennis,* 467 N.W.2d 806, 808 (Iowa Ct.App.1991). We will not disturb the district court's valuation of assets if it is within a permissible range of the evidence. *In re Marriage of Sullins,* 715 N.W.2d 242, 251 (Iowa 2006) (*citing In re Marriage of Bare,* 203 N.W.2d 551, 554 (Iowa 1973)). Here, the district court's valuations are within the permissible range of the evidence and we find no reason to disagree with its valuations. We find its treatment of the other issues equitable and not in violation of the premarital agreement. We affirm on this issue.

█ **B. Proceeds from Sale of Residence.** Teresa contends the district court should have given her the "share of the marital homes to which she is entitled under the premarital agreement." Teresa contends the district court did not correctly handle the equity in the personal residence. The parties had three homes over the course of the marriage and at the time of the dissolution hearing the third home

had been sold. They appeared to have sold one home and put the proceeds in the second and then sold the second and put the proceeds in the third.

Teresa admits, as the district court found, that the premarital agreement did not require the parties' homes to be put in both parties' names. While the premarital agreement required her to put money in the first home that was being constructed at the time of the marriage, she acknowledges she did not have documentary proof she put money in the home. The district court appears to have given her credit for decorating the homes, and valued these services at $3000, but the court did not find she had put money in the homes, and did not give her a share of the proceeds.

The premarital agreement provided that Teresa should put $15,000 from the sale of her home in the home the parties were constructing at the time of marriage, and then she should make monthly payments of $500 on the mortgage. She did not do this. The premarital agreement provided that the homestead would be owned eighty percent by Randall and twenty percent by Teresa. However the percentages were to be applied only after the respective parties were compensated for their contributions to the property and any encumbrances on the property were paid.

Teresa contends she should have twenty percent of $262,099, the amount received from the sale of the home after the payment of commission and the encumbrance, before Randall is repaid the money he put in the homes. She denies that Randall should have credit for these contributions. The premarital agreement acknowledged Randall had paid more than $100,000 towards the construction costs and would

pay an additional $150,000 toward securing a mortgage on the home. The evidence showed that he, not Teresa, made the monthly payments on the homes. Randall testified that there was no gain on the home sale, meaning basically he put more in the homes than he received on sale. The district court appears to have accepted this evidence, as do we. We affirm the district court on this issue.

■ **ALIMONY.** Randall contends Teresa should not have been awarded additional alimony. Teresa contends the alimony award was proper. Spousal support is provided for under Iowa Code section 598.21A (2009). Whether spousal support is justified is dependent on the facts of each case. *See In re Marriage of Fleener*, 247 N.W.2d 219, 220 (Iowa 1976). Entitlement to spousal support is not an absolute right. *Id.*

The premarital agreement provided there would be no alimony. However the supreme court in *Shanks*, 758 N.W.2d at 513, said:

> While the IUPAA largely adopts the provision of the UPAA verbatim, section 596.8(1) of the IUPAA differs from the UPAA in two important particulars. First, the UPAA allows a party to modify or eliminate spousal support in a premarital agreement, as long as the modification or elimination does not cause the other party to be eligible for public assistance at the time of enforcement. Unif. Premarital Agreement Act § 6(a)(2), 9B U.L.A. at 376. The IUPAA on the other hand, prohibits premarital agreements from adversely affecting spousal support. Iowa Code § 596.5(2) [3]

**3.** Chapter 596 deals with premarital agreements and the act is titled the "Iowa Uniform Premarital Agreement Act." Section 596.1(1) defines premarital agreement:

1. "Premarital agreement" means an agreement between prospective spouses made in contemplation of marriage to be effective upon marriage.

At the time of the dissolution hearing in January of 2006, Teresa was receiving temporary alimony of $2500 a month payable on the twentieth of each month commencing on November 20, 2004, when the parties separated. Said amounts were to continue during the pendency of the action. Judge Swanson in his March 10, 2006, decree provided the alimony established in November of 2004 should continue through April 2006, and then no further alimony should be awarded.[4] She received $40,000 during the pendency of the action.[5]

After appeal Teresa made an application to the Supreme Court requesting alimony as well as suit money. On May 5, 2006, by a single justice's order, the court denied the request saying,

> The limited information provided to this court does not convince this court that the petitioner should lose the benefits of providing a supersedeas bond. The Respondent's requests for alimony and suit money are denied.

In *Shanks*, 758 N.W.2d at 513, the court said the district court correctly concluded the purported alimony waiver in the premarital agreement was invalid and unenforceable, and in a footnote said, "[T]he district court shall revisit the subject of spousal support and enter an appropriate order under the circumstances."

Teresa asked for both past and future alimony in the case on appeal. The district court denied Teresa's request for past alimony saying, "This court does not believe it is appropriate to award past alimony, especially since the Supreme Court denied alimony pending appeal." The court ordered future alimony providing Randall shall pay alimony of $4000 a month commencing on August 1, 2009, through April 30, 2010, and then $3000 on the first day of each month until April 30, 2011, then $2000 on the first day of each month until April 30, 2012, and then $1000 on the first day of each month until April 30, 2013, said alimony to terminate on the death of either party and/or Teresa's remarriage.[6]

In addressing alimony the district court considered (1) the premarital agreement; (2) the marriage was short to moderate in duration; (2) Randall was fifty and Teresa was forty-six and both were in good physical and emotional health, although Teresa had recently suffered some health issues; (3) Randall had a law degree and Teresa a B.S., and neither party acquired additional education during the marriage, although Teresa was taking a financial advisor course at the time of the hearing on remand; (4) though Teresa was working at Randall's law firm during the marriage, she was essentially absent from the job market for six years, at the remand hearing she was working at her current earning capacity, but the court believed by 2013 she could acquire the skills necessary to enjoy a standard of living comparable to what she enjoyed during marriage.

The district court also considered (1) the property settlement and the minimal prop-

---

2. "Property" means an interest, present or future, legal or equitable, vested or contingent, in real or personal property.

4. He considered the alimony rehabilitative.

5. That is from November of 2004 to February 20, 2006. While the alimony was extended until April the decree granting the extension was reversed. See *Shanks*, 758 N.W.2d at 513 n. 6.

6. This appears to be $108,000 in alimony, though the court did find the alimony judgment for August and September 2009 to be fully satisfied and the judgment for October 2009 to be partially satisfied to the extent of $3104, making the total future alimony judgment to be $96,896.

erty with which Teresa left the marriage, (2) the property was non-income producing, (3) Teresa's efforts at managing and improving the parties' homes, (4) Teresa's unpaid services to Randall's law firm, (5) Teresa's labor in improving Randall's rental property, (6) Teresa's absence from the job market during the marriage, (7) Teresa's efforts to rehabilitate herself, (8) Teresa's apparent ability to attain a standard of living comparable to that enjoyed during the marriage, and (9) Randall's ability to pay.

Randall argues that during the marriage he paid Teresa's student loan obligations and she had extensive work experience prior to her marriage to him. He contends he already made sixteen alimony payments for a total of $40,000[7] and in addition he paid $15,500 in attorney fees and $5000 in expert witness fees for total payments of $60,500. He also says while Teresa's income was about $14,000 in 2006, it increased to $52,500 in 2007, and $56,000 in 2008. He argues that Teresa limited her time working outside the home during the marriage to allow her to accommodate the needs of her children from a prior marriage, and that he covered many expenses for these children.

Randall also contends that the district court in awarding alimony considered a number of factors that are contrary to the agreements Teresa made when she signed the premarital agreement. He points out she agreed that each would retain their separate property including any income earned on the assets as well as appreciation or depreciation in the value of the assets; that neither party had the right to claim separate property of the other; and other than otherwise provided in the agreement, they waived their claim to the same. He further points out that the agreement provided that no contribution of either party to the care, maintenance, improvement, or repair of separate property, whether it be in money, property, or personal services, should convert the property to marital property. Said contribution would be part of the separate property without the other claiming reimbursement or a share of the separate property. He also notes that Teresa waived any right she may acquire to share his assets as a result of marriage, and she waived all right to equitable distribution under Iowa law. They agreed in the event of a divorce there shall be no equitable distribution of any assets held by either. He also points out the agreement provided the law practice was totally his and Teresa waived any interest in it and in anticipated fees of $2 million in the event there was a dissolution of the marriage. The future fees were also to be his sole and separate assets and not be subject to equitable distribution. Additionally, the parties agreed not to seek contribution from the other for support and maintenance for their children.

■ We agree with Randall's argument that this is not a marriage that calls for traditional or rehabilitative alimony. It is short term and there is no showing that Randall's financial situation has been enhanced due to Teresa's efforts. In fact, his net worth at the time of the dissolution was substantially less than his estimated net worth as set forth in the premarital agreement.

Randall correctly states that many of the factors cited by the district court in awarding alimony, while factors generally considered in addressing alimony, are factors Teresa contracted away in the premarital agreement that the supreme court approved, other than for the issue of the alimony waiver. In doing so the supreme court found Teresa voluntarily executed

7. See footnote 5.

the agreement, which was mutual in scope. The court found the agreement basically sought to maintain the parties' premarital assets as separate property, and to perpetuate their premarital financial conditions through the marriage.

Randall argues the district court in using the unequal division of property to support the alimony award negates the agreement. We find it unnecessary to decide whether factors waived in a premarital agreement can be resurrected and used to support an alimony award because the issue can be resolved using several of the factors in Iowa Code section 598.21A.

This was a short marriage. Both parties are capable people and have the ability to support themselves. While Teresa left the job market except for occasional work at Randall's office, she did it in a large part because she wanted to spend time with her children. She and Randall both agreed they had no responsibility for the support of the other's children. There is no evidence Teresa assisted Randall's children financially, but he assisted hers. She received some $40,000 in alimony, has been able to reenter the job market, and earns an income that should provide her with comfortable support. By the time of the hearing Teresa was earning about $60,000 a year. Randall's net worth has decreased since his marriage.

■ Alimony is awarded to accomplish one or more of three general purposes. *See In re Marriage of O'Rourke*, 547 N.W.2d 864, 866 (Iowa Ct.App.1996). "The amount of alimony awarded and its duration will differ according to the purpose it is designed to serve." *Id.* at 866–67. (finding an award of $46,000 after a three year marriage is excessive). Rehabilitative alimony serves one of these purposes by supporting an economically dependent spouse through a limited period of education and retraining. *Id.* "Its objec-

tive is self-sufficiency." *Id.* The rehabilitative alimony award in this case is excessive. The award made during the pending action was sufficient. We modify to eliminate the alimony award.

■ **ATTORNEY FEES.** Randall contends he should not have been required to pay Teresa for her attorney fees. Randall contends the supreme court reversed for spousal support and enforcement of the premarital agreement, and there was no directive to revisit attorney and expert witness fees.

In *In re Marriage of Davis*, 608 N.W.2d 766, 769 (Iowa 2000), the court said:

When, as here, an appellate court remands for a special purpose, the district court upon such remand is limited to do the special thing authorized by the appellate court in its opinion and nothing else. The district court has no authority to do anything except to proceed in accordance with the mandate. *Id.* If the district court proceeds contrary to the mandate, its decision must be treated as null and void. *Id.* Therefore, when the remand limits the issues for determination, the court on remand is precluded from considering other issues, or new matters.

On remand it should interpret the mandate in "accordance with the context of the proceedings" and should "tak[e] into account the appellate court's opinion and the circumstances it embraces."

(Citations omitted.) Mindful of this holding we are inclined to believe the district court exceeded its authority in awarding attorney fees. Here the court remanded for enforcement of the premarital agreement and to address the issue of alimony. We modify to strike that award of attorney fees.

We award no attorney fees on appeal. Costs of this action are taxed one-half to each party.

**AFFIRMED AS MODIFIED.**