# IN THE COURT OF APPEALS OF IOWA

No. 16-0744
Filed December 20, 2017

**IN RE THE MARRIAGE OF MARCUS RICHARDT YEAGER
AND JENNIFER KAY YEAGER**

**Upon the Petition of
MARCUS RICHARDT YEAGER,**
        Petitioner-Appellant,

**And Concerning
JENNIFER KAY YEAGER,**
        Respondent-Appellee.

_____

        Appeal from the Iowa District Court for Polk County, Robert B. Hanson,

Judge.


        A husband appeals the economic provisions of the parties' dissolution

decree. **AFFIRMED AS MODIFIED.**


        R.A. Bartolomei of Bartolomei & Lange, P.L.C., Des Moines, for appellant.

        Anjela A. Shutts and Sarah S. James of Whitfield & Eddy, P.L.C., Des

Moines, for appellee.


        Heard by Vogel, P.J., and Tabor and Bower, JJ.

**BOWER, Judge.**

Marcus Yeager appeals the economic provisions of the dissolution decree from his marriage to Jennifer Yeager. We find the district court properly divided the marital property, including the down payment, and properly established child support. However, the spousal support established by the district court was excessive. We also find an award of appellate attorney fees is not appropriate. We affirm the district court decree as modified.

## I.   Background Facts and Proceedings

Marcus and Jennifer married in 1996. They have three children, J.Y., M.Y., and S.Y. The oldest child was eighteen at the time of trial and anticipated graduating from high school in the spring of 2016. Marcus completed his degree in project management during the marriage while working. Marcus earns approximately $45,500 per year.

Jennifer earned a degree in accounting from the University of Iowa prior to the marriage. Jennifer attempted the CPA exam in 1994 but did not pass. The parties moved to California, where Jennifer worked in several accounting positions until 1999, when their second child was born. Jennifer left the workforce in order to raise the parties' children. Jennifer worked sporadically for Marcus's small business doing bookkeeping and other accounting work but did not fully return to the workforce. The parties moved back to Iowa in 2005.

Jennifer returned to work in 2008 as an associate for students with special needs. The parties agreed this position would allow her flexibility to continue to care for their children as needed. Jennifer earned approximately $18,000 per

year. Jennifer is currently pursuing a degree in education and plans to become a middle school math teacher. At the time of trial, Jennifer anticipated she would be student teaching in the fall of 2017, and obtaining her teaching license in January of 2018.

When the parties lived in California, the house they lived in was initially purchased by Marcus's parents. The property was titled in the names of Marcus's parents and Marcus. Jennifer's name was not listed on the property title or the mortgage. Three years later the parties refinanced the house and purchased the property from Marcus's parents, although $28,000 was provided by Marcus's mother as a down payment. At trial, Marcus's mother testified the down payment was a loan. However, the parties have made no payments, no documents exist referencing the loan, and even though a substantial profit was made from the sale of the house, no payment or promise of payment was made.

Marcus filed a petition for dissolution on January 21, 2015. Trial was held January 27-29, and February 3, 2016. The district court entered its decree April 25. The district court awarded Marcus the marital home but required him to refinance it in his own name within ninety days or sell the home, assigned him sole responsibility for the mortgage, and required him to pay Jennifer her share of the equity, $31,559, within ninety days or interest would accrue at five percent per annum. Marcus was also required to pay Jennifer $750 per month in spousal support until July 2018. Child support was set at $1049 per month for three children, $888.57 for two, and $601.77 for one child. The district court's decree also established shared legal custody, granted physical care of the children to

Jennifer, and divided other marital property, though none of these provisions are appealed here. Marcus filed a notice of appeal April 29.

## II.    Standard of Review

Equitable actions are reviewed de novo. Iowa R. App. P. 6.907. We examine the record and adjudicate the rights of the parties anew. *In re Marriage of Williams*, 589 N.W.2d 759, 761 (Iowa Ct. App. 1998). Because the district court is in a unique position to hear the evidence, we defer to the district court's determinations of credibility. *In re Marriage of Brown*, 487 N.W.2d 331, 332 (Iowa 1992). While our review is de novo, the district court is given latitude to make determinations which we will disturb only if equity has not been done. *In re Marriage of Okland*, 699 N.W.2d 260, 263 (Iowa 2005).

## III.    Property Division

Marcus claims the district court improperly valued the marital home and should have set off $28,000 of its value as a gift to him from his mother, or in the alternative, should have evenly divided the $28,000 loan between the parties as a debt. The valuation by the district court will usually not be disturbed if it is within the range of evidence. *In re Marriage of Hansen*, 733 N.W.2d 683, 703 (Iowa 2007). A homeowner is qualified to testify to the value of their own home. *Id.* Our supreme court has also held loans from family members should not be treated as loans from disinterested parties. *Id.* at 704.

### a. Value of the Marital Home

Marcus claims the district court should not have averaged the parties' estimates to determine the marital home's value. Marcus claims he presented

stronger, more reliable evidence on the valuation of the home. He investigated the sales of other homes in the neighborhood, compared those homes and values against the value of the marital home, and considered the purchase price of the marital home. Jennifer relied on her own valuation of the home and the assessed value of the home, which she testified, "seems to be about what the houses in the neighborhood are doing."

Marcus valued the home at $180,000, and Jennifer valued the home at $193,900. The district court specifically stated in its ruling, "The court accepts the values assigned to the various assets and liabilities contained in the financial affidavits and, when there are disparities between the values assigned to same by the parties, the court averages the two." Both parties presented qualified evidence of the value of the home, and the district court's value was within the range of the evidence presented. The district court is not required to favor Marcus's evidence simply because Marcus believes it is more convincing. The district court's value was within the range of evidence, and so we will not disturb it. *See id.* at 703.

### b. Offset

Marcus next claims the district court should have found the $28,000 down payment was a gift to him alone or, in the alternative, the $28,000 was a loan that should have been offset against the equity of both parties. The district court found:

> Marcus has requested the Court offset some of the equity in the parties' home to him, alleging that his parents loaned him and Jennifer money to purchase their first home in California. By all accounts, there was no written documentation of this loan. No

payments have ever been made by Marcus or Jennifer, even after the parties sold the home. For these reasons, the court is very skeptical as to Marcus's assertion that this was a "real" loan as that term is generally used. Further, case law indicates that loans from family members are not to be treated like loans from third parties or financial institutions. . . . Because of these factors, the Court declines to offset any amount in the equity in the home to Marcus. The Court assigns this debt to Marcus but is reasonably certain that, in doing so, it will never have to be repaid by him.

Marcus's mother testified at trial the loan was in fact real, and she insisted she required and expected repayment. No documents were signed evidencing the loan, there is no evidence of private demands, and no legal action has been taken to enforce the loan after more than fifteen years. We agree with the district court. The evidence before us shows the $28,000 to be a loan, but one that has not been, and likely never will be, pursued. An indebtedness to a close family member may be treated differently than a loan from a financial institution or disinterested third party. *Id.* at 704. Therefore, we find it is equitable to assign the debt wholly to Marcus.

## IV.    Spousal Support

Marcus claims the district court improperly determined the spousal support award to Jennifer. The district court found Jennifer had an income of approximately $18,500 annually working as an educational aid. Marcus claims Jennifer is immediately employable as a general accountant and so should not be awarded alimony or, in the alternative, the court should have ordered a lesser amount.

"In reviewing questions related to spousal support, while our review is de novo, we have emphasized that 'we accord the trial court considerable latitude.'

We will disturb the trial court's order 'only when there has been a failure to do equity.'" *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015) (citations omitted). "Whether spousal support is justified is dependent on the facts of each case." *In re Marriage of Shanks*, 805 N.W.2d 175, 178 (Iowa Ct. App. 2011).

> Upon every judgment of annulment, dissolution, or separate maintenance, the court may grant an order requiring support payments to either party for a limited or indefinite length of time after considering all of the following:
> a. The length of the marriage.
> b. The age and physical and emotional health of the parties.
> c. The distribution of property made pursuant to section 598.21.
> d. The educational level of each party at the time of marriage and at the time the action is commenced.
> e. The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.
> f. The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.
> g. The tax consequences to each party.
> h. Any mutual agreement made by the parties concerning financial or service contributions by one party with the expectation of future reciprocation or compensation by the other party.
> i. The provisions of an antenuptial agreement.
> j. Other factors the court may determine to be relevant in an individual case.

Iowa Code § 598.21A(1) (2015); *see also Gust*, 858 N.W.2d at 407.

The parties were married for twenty years. Jennifer worked prior to the parties' children being born and helped Marcus with his business during the course of the marriage. When the children were attending school, Jennifer began to work in the school district as an educational aide, and she is attending school to pursue her teaching degree. We find Jennifer is not able to

immediately re-enter the work force as an accountant, a field in which she has not meaningfully worked for more than fifteen years.

However, we find the district court did award an excessive amount of alimony. Based on Marcus's income, child support obligations, and other financial obligations, such as the mortgage payments for the marital home, the amount of alimony is inequitable. Therefore, we find Marcus will no longer be required to pay spousal support effective January 15, 2018.[1]

## V. Child Support

Marcus also claims the district court failed to do equity by failing to consider the amount of spousal support when determining his child support obligation. The district court is required to take obligations of child or spousal support from previous dissolutions into consideration when determining the amount of child support in a dissolution decree. Iowa Ct. R. 9.5(8). The district court may take into account the amount of spousal support awarded in the current decree but is not required to. *In re Marriage of Lalone*, 469 N.W.2d 695, 697 (Iowa 1991). We find the district court equitably awarded child support.

## VI. Attorney Fees

Jennifer claims she should be awarded appellate attorney fees. "An award of attorney's fees is not a matter of right but rests within the discretion of the court." *In re Marriage of Benson*, 545 N.W.2d 252, 258 (Iowa 1996). We find a grant of appellate attorney fees is inappropriate in this case.

**AFFIRMED AS MODIFIED.**

---

[1] As we have terminated spousal support effective January 15, 2018, there is no longer a requirement that Marcus have life insurance to secure the obligation.