**IN THE COURT OF APPEALS OF IOWA**

No. 23-1544
Filed October 16, 2024

**IN RE THE MARRIAGE OF BEVERLY BEHARY WILLIAMS
AND RONALD CHRISTOPHER WILLIAMS**

**Upon the Petition of
BEVERLY BEHARY WILLIAMS,**
　　　　Petitioner-Appellee,

**And Concerning
RONALD CHRISTOPHER WILLIAMS,**
　　　　Respondent-Appellant.
_____

　　　　Appeal from the Iowa District Court for Story County, James C. Ellefson,

Judge.

　　　　Ronald Christopher Williams appeals the economic provisions of the decree

dissolving his marriage to Beverly Behary Williams. **AFFIRMED AND

REMANDED.**

　　　　Andrew B. Howie, Shindler, Anderson, Goplerud & Weese, P.C., West Des

Moines, for appellant.

　　　　Brian J. Humke and Logan J. Eliasen of Nyemaster Goode, P.C., Ames, for

appellee.

　　　　Considered by Ahlers, P.J., and Chicchelly and Buller, JJ.

**CHICCHELLY, Judge.**

Ronald Christopher Williams (Chris) appeals the economic provisions of the decree dissolving his marriage to Beverly Behary Williams (Beverly). He contends the property distribution and spousal support are inequitable. Upon our review, we find the trial court's order is equitable in regard to both provisions.

## I.    *Background Facts and Proceedings.*

Chris and Beverly were married on May 3, 1997. They share two children: J.W., born in 2005; and G.W., born in 2007. In late 2021, Beverly petitioned for dissolution. While the parties stipulated to most of their dissolution provisions, they could not agree on property distribution or spousal support.

Throughout most of their marriage, the couple largely focused on Chris's career. Chris moved states multiple times for job opportunities, and Beverly followed him. Chris eventually got a professorship at Iowa State University, and the couple settled in Ames, Iowa, where they remained until the end of the marriage. Beverly testified that as a result of the relocations, there were times she took extended breaks from the workforce because her pharmacy license was state-specific. When she did work, it was often part-time because she provided most of the childcare. But in early 2020, Beverly started working full-time at the Iowa State University Lloyd Veterinary Hospital. She testified that she loves her job and plans to stay there until her retirement at sixty-five.

After considering the circumstances of their marriage, the court awarded Beverly $2500 per month in traditional spousal support to "allow her to live at approximately the standard of living the parties enjoyed before the dissolution." It

based its determination primarily on the parties' disparate incomes, their respective contributions to the marriage, and the twenty-six years they were married.

But the property distribution was more complicated. The most substantial dispute at trial was the valuation of Chris's interest in SoyLei. SoyLei is a start-up created in June 2020 that licenses technology patented by Iowa State University. Chris, as one of six people who established the company, owns a sixteen percent interest, which is held in a limited-liability company, Polybit Unlimited LLC. After its creation, SoyLei entered into an exclusive licensing agreement with ColorBiotics. This contract "ha[d] not panned out" as expected, and by trial in August 2023, SoyLei had made no sales that year. But nonetheless, 2023 was still a formative year for the company. The ColorBiotics contract ended that September, with no plans to renew. SoyLei also began product development on a new asphalt technology, and it received a United States Department of Agriculture grant for $4,974,327. Half of the grant funding was slated for the two supporting universities, Iowa State University and Auburn University, while the rest was for SoyLei personnel, materials, and equipment. SoyLei also secured financing from Availa Bank for $1,500,000 and from First National Bank for $400,000.

Because the parties could not agree on the approximate value of Chris's interest in SoyLei, they each retained their own experts to complete an estimate. Chris retained Zach Eubank, an expert in business appraisals, who valued a 1/6th interest in the company at approximately $12,000 rounded. Eubank testified that this figure was based primarily on historic revenues since the company's inception. Chris then testified, disagreeing with his own expert and valuing his interest at

$64,773.[1]  Beverly's business-appraisal expert, Brian Crotty, valued Chris's SoyLei interest at $1,171,464.  Crotty further criticized Eubank's valuation, explaining that analyzing SoyLei's past revenues was "a waste of time."  Because the figures were based on the ColorBiotics contract, which "is not likely to continue or be renewed," the valuation was already outdated.  Instead, Crotty focused on the recent changes within the company, including SoyLei's current product development, the relatively low royalty fees taken by Iowa State University compared to the industry market, its substantial financial backing, and especially its receipt of the USDA grant.  The court found Crotty more credible, valued Chris's interest in SoyLei at $900,000,[2] and included it as part of the marital property distributions.

Chris appeals, challenging both the property-distribution and spousal-support provisions.

## II.    Review.

Because dissolutions of marriage are equitable proceedings, our review is de novo.  *In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016).  While not binding, "we give weight to the findings of the district court, especially to the extent credibility determinations are involved."  *Hansen*, 733 N.W.2d at 690.  We will only disturb such findings if they fail "to do equity."  *Mauer*, 874 N.W.2d at 106.

---

[1] While Chris does not maintain that he is an appraisal expert, a property owner is considered "a competent witness" to testify to its market value.  *See In re Marriage of Hansen*, 733 N.W.2d 683, 703 (Iowa 2007).

[2] The court discounted Crotty's initial valuation by twenty-four percent "to account for the uncertainty of [financial] forecasts."

### III. Discussion.

Chris contends the court's property-distribution and spousal-support provisions are inequitable. "There are no hard and fast rules governing the economic provisions in a dissolution action; each decision depends upon the unique circumstances and facts relevant to each issue." *In re Marriage of Gaer*, 476 N.W.2d 324, 326 (Iowa 1991). Therefore, we consider each argument in turn, bearing in mind the specifics of the case.

### A. Distribution of Property.

While Chris generally appeals the property distribution, he does not dispute the distribution itself or that Beverly is entitled to certain marital assets. Instead, he only challenges the court's valuation of his interest in SoyLei and his ability to pay the equalization payment. "Valuation is difficult and trial courts are given considerable leeway in resolving disputes as to valuations." *In re Marriage of Shanks*, 805 N.W.2d 175, 177 (Iowa Ct. App. 2011). We therefore will not disturb a court's valuation "when it is within the range of permissible evidence" and supported by "credibility findings or corroborating evidence." *Hansen*, 733 N.W.2d at 703. At trial, the parties presented contradictory evidence regarding SoyLei's value, and the court found Beverly's expert more credible. In making this determination, the court explained that Eubank's focus was misplaced. Eubank relied primarily on the expiring contract and "fail[ed] to consider the significance" of the USDA's willingness to back SoyLei's new product. The court found the receipt of such a prestigious grant was "an affirmation of the value of the new product" and thus justified the higher valuation. But it also noted "the uncertainty of [future] forecasts" and discounted Chris's interest in SoyLei to $900,000 to

account for any discrepancies in predictions. This figure was within the range of evidence presented at trial, and we readily defer to the court's credibility determination in battles of experts. *In re Marriage of Marasco*, No. 22-0847, 2023 WL 3862591, at *3 (Iowa Ct. App. June 7, 2023).

As for Chris's claims that the court "failed to consider the tax consequences" and "the trial record shows Chris cannot pay" the amount ordered, we disagree. While we have previously considered the tax consequences of an equalization payment requiring liquidation of assets, *see In re Marriage of Bertrand*, No. 06-1937, 2007 WL 3376894, at *6 (Iowa Ct. App. Nov. 15, 2007), this is just one of many factors considered by the court, *see* Iowa Code § 598.21(5)(j) (2021). The trial court expressly noted the tax consequences in its order as one of many considerations. But it also weighed this against the substantial assets available to Chris. As part of the property distribution, Chris received over $3,000,000 in value, including the interest in SoyLei, two real estate properties, and a seven-figure retirement account. Despite Chris testifying "I have no money," the trial court found Chris was not credible regarding his finances. Chris holds sizable assets and "has a history of earning an excellent income," with an average annual salary of $198,071. For these reasons, the trial court found that Chris had the ability to pay Beverly the $659,793.25 equalization payment, especially over the prescribed five-year period, and we agree.

*B. Spousal Support.*

Chris also argues that the court's award of $2500 per month in traditional spousal support is inequitable because Beverly's already high income and her relatively low expenses do not justify such an award. We begin by noting that the

court has "considerable latitude" in fashioning or denying an award of spousal support. *In re Marriage of Mann*, 943 N.W.2d 15, 20 (Iowa 2020) (citation omitted). Based on the high level of discretion afforded to the trial court, "precedent may be of little value in deciding each case." *In re Marriage of Gust*, 858 N.W.2d 402, 408 (Iowa 2015). While the type of spousal support is of little consequence to our analysis, we have recognized four categories of spousal support: traditional, rehabilitative, reimbursement, and transitional. *See id.*; *In re Marriage of Pazhoor*, 971 N.W.2d 530, 543 (Iowa 2022). But the ultimate goal is the same: "to balance the parties' needs" and "do equity." *Gust*, 858 N.W.2d at 416. To achieve this goal, we consider several statutorily-guided factors when determining an equitable spousal-support award. *See* Iowa Code § 598.21A(1).[3]

---

[3] These factors include:

    a. The length of the marriage.
    b. The age and physical and emotional health of the parties.
    c. The distribution of property made pursuant to section 598.21.
    d. The educational level of each party at the time of the marriage and at the time the action is commenced.
    e. The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.
    f. The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.
    g. The tax consequences to each party.
    h. Any mutual agreement made by the parties concerning financial or service contributions by one party with the expectation of future reciprocation or compensation by the other party.
    i. The provisions of an antenuptial agreement.
    j. Other factors the court may determine to be relevant in an individual case.

After our own review of the requisite factors, we find the award is equitable. Chris first claims the tax consequences do not justify a spousal-support award. We do acknowledge recent changes in tax law require Chris to pay tax on any award, which may support denying or reducing the amount. *See In re Marriage of Meints*, No. 21-0172, 2022 WL 244433, at *7 (Iowa Ct. App. Jan. 27, 2022) (acknowledging "changes in federal income tax laws" that alter the tax obligations for spousal-support payments). But all the other factors do not weigh in his favor. First, "[t]he length of the marriage is comfortably within our caselaw where a spouse may be considered for indefinite spousal support." *Gust*, 858 N.W.2d at 415 (finding a twenty-six-year marriage supports a finding of traditional spousal support). In determining that traditional spousal support was supported by the record, the court focused on the duration of the marriage and Beverly's non-monetary contributions to the marriage. In lieu of traditional support, Chris proposes a $1250 per month transitional-spousal-support award. But "transitional spousal support is focused on solving a short-term liquidity issue," which is not at issue here. *See In re Marriage of Sokol*, 985 N.W.2d 177, 187 (Iowa 2023). Instead, we agree with the court's finding that a traditional award is appropriate. As for the parties themselves, they are reasonably similar: both are in their fifties, in good health, and hold advanced degrees, which does not support or cut against an award. Both parties also received substantial assets during property distribution, although Chris's share was nearly double the value of Beverly's. Beverly's share is also delayed because Chris has five years to disperse the full amount. But most importantly, where the parties differ reflects our two priority concerns: "need and ability." *Id.* at 411. To determine the parties' needs and

abilities, "we focus on the earning capability of the spouses" instead of doing a basic income calculation. *Id.* The court found that while Beverly made a healthy six-figure income, she was already "earning at her full capacity," with little hope of future sizeable raises. The court partially attributed this to the couple's many relocations, which required Beverly "to start over in her pharmacy career," and her working part-time to provide the bulk of childcare. Conversely, between 2017 through June 2023, the court found Chris averaged $198,071 in earnings annually. At the time of trial, Chris was "on pace to earn $226,934 for the year." This is before calculating any additional income not derived from Iowa State University. When comparing Chris's earnings with Beverly's, which is $103,370 annually, the court found a significant disparity. While Chris testified that his income would actually decrease over time, the trial court found his testimony not credible. Chris may disagree with such findings, but the court was in the best position to personally observe and assess the parties' testimonies and make such a credibility determination. *See Mann*, 943 N.W.2d at 20.

Chris further challenges Beverly's "inflated" expenses, attempting to parse out certain items he finds "unjustified."[4] But we do not audit Beverly's budget line-by-line to appease the parties; instead, our only real consideration is whether her expenses are comparable to what was enjoyed by the parties during the marriage. *See Gust*, 858 N.W.2d at 415 (noting the goal of spousal support is "to

---

[4] Chris claims that because the court denied Beverly trial attorney fees, Beverly should not have been permitted to include $750 towards "Attorney Fees" in her monthly expenses list. But other than a passing reference, he provides no authority justifying his position; we therefore do not consider its merits. *See* Iowa App. P. 6.903(2)(8)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue.").

live in a fashion that approaches the lifestyle to which she was accustomed in the marriage"); *Pazhoor*, 971 N.W.2d at 543 ("Ideally, the support should be fixed so the continuation of both parties' standard of living can continue, if possible." (citation omitted)). We find that Beverly's expenses are comparable to what she enjoyed during the marriage. The items Chris disputes, such as modest monthly savings and charitable contributions, are part of such analysis. *See In re Marriage of Stenzel*, 908 N.W.2d 524, 536 (Iowa Ct. App. 2018) (finding "charitable donations and retirement savings in a reasonable sum may be a part of the needs analysis in fixing spousal support"). But more significantly, Beverly testified that her lifestyle has necessarily changed since becoming a single-income household, stating she has had "to cut back on some clothing and some of the necessities." While they did not live lavishly during their marriage, Chris and Beverly were always comfortable and easily able to meet any unexpected expenses. The two frequently vacationed, and Beverly and the children would often follow Chris to his many conferences, making a holiday out it. Since the separation, Beverly testified that she can no longer afford vacations or even an emergency fund. The trial court therefore found that Beverly had the "need" and Chris the "ability [to pay]." *Gust*, 858 N.W.2d at 411. We agree. Based on the factors listed in section 598.21A(1), we find that the spousal-support award is equitable.

*C. Appellate Attorney Fees.*

Finally, Beverly asks us to also award her appellate attorney fees. An award of appellate attorney fees is not a matter of right but rests in this court's discretion. *See In re Marriage of Towne*, 966 N.W.2d 668, 680 (Iowa Ct. App. 2021). Our "controlling consideration" is the parties' financial positions, but we also consider

"whether a party has been obliged to defend the trial court's decision on appeal." *In re Marriage of Michael*, 839 N.W.2d 630, 639 (Iowa 2013). While both Chris and Beverly have some financial resources to pay their respective attorney fees, Chris makes nearly double what Beverly does annually. Beverly is also the prevailing party and was forced to defend this action. *See id.* Under these circumstances, it is appropriate to award Beverly appellate attorney fees. But because she has not provided an affidavit of attorney fees with documentation to support her request, we remand to the district court to determine Beverly's reasonable appellate attorney fees and enter judgment against Chris for that amount. *See Towne*, 966 N.W.2d at 680 (remanding for the district court to calculate "reasonable and necessary fees" incurred on appeal).

## IV. Disposition.

Because the court's property-distribution and spousal-support provisions are equitable, we affirm. We also award Beverly appellate attorney fees, but because we lack an attorney-fees affidavit, we remand to the district court to determine the appropriate amount.

**AFFIRMED AND REMANDED.**

Buller, J., concurs; Ahlers, P.J., partially dissents.

**AHLERS, Presiding Judge** (concurring in part and dissenting in part).

I agree with and join the majority's decision rejecting the husband's challenge to the property division. I also agree that in this case the husband should pay traditional spousal support—as opposed to the transitional spousal support suggested by the husband. But, because I find the amount of that support to be excessive, I part ways with the majority's decision to affirm on that issue.

Back when spousal support was tax deductible to the payor and taxable to the payee, ordering spousal support of $2500 per month may have been warranted on these facts. Even then, I would find it to be on the high end of a reasonable range, but I would affirm the award, following our supreme court's directive not to unduly tinker with such awards. *See In re Marriage of Sokol*, 985 N.W.2d 177, 182 (Iowa 2023) ("The institutional deference afforded the district court in determining spousal support counsels against undue tinkering with spousal support awards.").

But spousal support is no longer tax deductible to the payor and taxable to the payee. *In re Marriage of Mann*, 943 N.W.2d 15, 21 (Iowa 2020). And tax consequences to the parties is one of the factors to consider in determining spousal support. Iowa Code § 598.21A(1)(g) (2021). The record suggests the district court did not adequately consider the nontaxable nature of the spousal support awarded. In setting the spousal support at $2500 per month ($30,000 per year), the district court included a calculation stating the resulting gross annual income to the parties after payment of the spousal support, presumably to show a continuing disparity in the husband's favor. But the resulting gross income figures is a largely irrelevant calculation, as the $30,000 per year of spousal support is paid with after-tax money. Given the nontaxable nature of spousal support, the

relevant calculation is the after-tax income figures. The failure to consider that relevant calculation suggests a flaw in the logic in setting spousal support.

So let's look at the statutory factors. *Id.* § 598.21A(1) (listing relevant factors to consider when determining a spousal-support award). Given the length of the marriage, the fact that the wife's career took a back seat when the family moved for the husband's career, and she took on the primary parenting responsibilities, the award of some amount of traditional support is warranted. *See id.* § 598.21A(1)(a), (e); *In re Marriage of Gust*, 858 N.W.2d 402, 410–11 (Iowa 2015) ("Generally speaking, marriages lasting twenty or more years commonly cross the durational threshold and merit serious consideration for traditional spousal support.").

But certain factors cut against the amount awarded. Both parties are about the same age and are in good health. *See* Iowa Code § 598.21A(1)(b). Both have advanced degrees. *See id.* § 598.21A(1)(d). Both have substantial incomes that would allow each to be self-supporting without support from the other, though both will encounter the unavoidable decrease in standard of living that comes from transitioning from a single household supported by two incomes to two households each supported by one income. *See id.* § 598.21A(1)(f); *see also In re Marriage of Stenzel*, 908 N.W.2d 524, 534 (Iowa Ct. App. 2018) (noting the problem of stretching the same income into two households rather than one). In addition, both parties are receiving substantial property—nearly $2.5 million each—decreasing the need for any spousal support, especially considering the cash-flow crunch to the husband and benefit to the wife stemming from the nearly $660,000 equalization payment that will be paid with interest. *See* Iowa Code

§ 598.21A(1)(c). And finally, there are the tax consequences I have already discussed. *See id.* § 598.21A(1)(g).

Balancing all these factors, a traditional spousal support of $2500 per month fails to do equity. A monthly support amount of $1250 ($15,000 per year) would be more in line with the equities of this case. I would modify the district court's order to reduce the husband's monthly spousal support to that amount. Based on this disposition and consideration of the other relevant factors, I would also deny the wife's claim for appellate attorney fees.

In conclusion, I concur with the majority's decision to affirm the property division and award of traditional spousal support. I respectfully dissent from the decision to affirm the amount of the spousal support award and award the wife appellate attorney fees.