# IN THE COURT OF APPEALS OF IOWA

––––––––––––––––––

No. 24-1853
Filed January 7, 2026

––––––––––––––––––

**In re the Marriage of David Alan O'Brien and Cori Lynn O'Brien**

Upon the Petition of
**David Alan O'Brien,**
Petitioner–Appellant,

And Concerning
**Cori Lynn O'Brien n/k/a Cori Lynn Allen,**
Respondent–Appellee.

––––––––––––––––––

Appeal from the Iowa District Court for Webster County,
The Honorable Angela L. Doyle, Judge.

––––––––––––––––––

**AFFIRMED**

––––––––––––––––––

Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C.,
West Des Moines, attorney for appellant.

Vicki R. Copeland of Copeland Law Firm, P.L.L.C, Jefferson,
attorney for appellee.

––––––––––––––––––

Considered without oral argument
by Greer, P.J., and Badding and Chicchelly, JJ.
Opinion by Chicchelly, J.

1

**CHICCHELLY, Judge.**

This appeal involves the economic terms of the decree involving the marriage of David and Cori O'Brien. David appeals (1) the classification of his 401k in the property division, (2) the valuation of the parties' business, and (3) the district court's property division. Additionally, Cori requests appellate attorney fees. Upon our de novo review, we affirm and award Cori appellate attorney fees.

## BACKGROUND FACTS AND PROCEEDINGS

David and Cori were married in October 2013. During the marriage the parties had no children. David and Cori were married for approximately ten years before they separated.

David was employed by Woodruff Construction from 1998 to 2019. Following a motor vehicle accident, he sustained a broken wrist, fractured ribs, and a concussion. His employment was terminated shortly after. After his termination, David sold approximately $352,000 in Woodruff stock.

David was employed by another construction company from September 2022 to June 2023. David's health has been in decline for several years. Cori was employed as a paraeducator at Fort Dodge Community Schools from 2007 to the end of the 2013 school year. As a result, she has an Iowa Public Employees Retirement System (IPERS) retirement asset.

In June 2012, the parties purchased a home in Fort Dodge. The parties disputed the value of the home. David values the marital residence at $281,500 and Cori values the residence at $335,000. The home was

appraised for $335,000 in 2024. The district court found the net market value for the home at the time of trial to be $292,778.[1]

David and Cori purchased a Tropical Smoothie Café (Tropical Smoothie) in Fort Dodge in May 2014. They formed a corporation and acted as equal co-owners of the corporation. Cori was primarily responsible for the hands-on operation of the business after its acquisition and was managing the business at the time of trial. David primarily handled the business's finances and taxes.

David filed for dissolution in August 2022. The matter proceeded to trial in May 2024. The district court entered its decree in October 2024.

The district court found David should be awarded the parties' home with a net value of $292,778. Cori was awarded the Tropical Smoothie valued at $235,000.[2] At the time of trial, David had five retirement accounts valued at $1,270,580. Cori's retirement accounts were valued at $43,618 and she had her IPERS from working at Fort Dodge schools. The district court awarded David $824,746 worth of retirement accounts and Cori approximately $478,833 worth of retirement accounts. Additionally, David was ordered to pay Cori a $200,000 equalization payment. David now appeals.

## STANDARD OF REVIEW

Because dissolutions of marriage are equitable proceedings, our review is de novo. *In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016). We

---

[1] All number values in this opinion were rounded to the nearest dollar.

[2] This value was inclusive of the business and all assets owned by the business. The district court also applied a 10% marketability discount to the value of the Tropical Smoothie.

give weight to the factual findings of the district court, especially when considering the credibility of witnesses, but are not bound by them. *Id.* We will disturb those findings only if they fail to do equity. *Id.* "There are no hard and fast rules governing the economic provisions in a dissolution action; each decision depends upon the unique circumstances and facts relevant to each issue." *In re Marriage of Gaer*, 476 N.W.2d 324, 326 (Iowa 1991).

## SEPARATE PROPERTY

David first argues the district court erred in failing to assign three retirement and investment accounts—Fullswing TOD, Brighthouse IRA, and Allianz IRA—as premarital property. He essentially argues he should be credited for these accounts because they were brought into the marriage. But Iowa is an equitable distribution state. *In re Marriage of Sullins*, 715 N.W.2d 242, 247 (Iowa 2006). This "means that courts divide the property of the parties at the time of divorce, except any property excluded from the divisible estate as separate property, in an equitable manner in light of the particular circumstances of the parties." *Id.* (quoting *In re Marriage of Schriner*, 695 N.W.2d 493, 496 (Iowa 2005)). The fact that the property is premarital is just a factor in the district court's crafting of an equitable distribution. *Id.*

On our review of the entirety of the record, we find the district court's distribution of the retirement accounts was equitable. The district court stated it "considered David's premarital accounts as a factor, together with all other factors, in making an equitable distribution of the parties' property, including the retirement and investment accounts." Next, the district court considered whether these accounts were funded with marital assets. The district court had limited documentation despite giving several opportunities to David to provide documentation regarding the Fullswing TOD account. Like the district court, upon our review of the documents in the record we

4

conclude that David contributed to this account during the marriage. The district court found David's testimony to the contrary not credible, and we defer to that credibility finding. *See In re Marriage of Hansen*, 733 N.W.2d 683, 690 (Iowa 2007).

As it relates to the district court's division of the retirement accounts, we find the distribution equitable. Iowa Code section 598.21(5) requires the district court to "divide all property, except inherited property or gifts received or expected by one party, equitably between the parties." We will only disturb a decree's division when it fails to do equity, and what is equitable "depends upon the circumstances of each case," as guided by the factors in Iowa Code section 598.21(5). *Hansen*, 733 N.W.2d at 702. Our review of the record shows the district court awarded David approximately $824,746 worth of retirement accounts and Cori approximately $478,833 worth of retirement accounts. The district court also divided Cori's IPERS asset pursuant to the *Benson*[3] formula. We find the court's distribution of retirement accounts to be equitable.

## BUSINESS VALUATION

Next David argues the district court erred in determining the fair market value of the Tropical Smoothie franchise the couple owned. At trial, Cori argued for a valuation of $150,000 and David argued for a valuation between $235,000 and $350,000. At trial, David presented expert testimony from a certified public accountant, Murray Stanley. He testified that using a market-based approach, he appraised the business at $235,000. Stanley further testified that his valuation would be closer to $300,000 if the owner was managing and operating the business. The district court adopted the

---

[3] *In re Marriage of Benson*, 545 N.W.2d 252, 254–57 (Iowa 1996).

$235,000 after hearing conflicting testimony regarding Cori's involvement in the business. In assessing credibility, the district court found "there is no credible evidence to support David's assertion that the business is undervalued as a result of Cori's alleged failure to manage it."

David now argues the business valuation is incorrect because (1) the expert's valuation did not include the 2020 Jeep Gladiator owned by Tropical Smoothie; (2) the $32,744.72 "advertising reimbursement" was not included, and (3) the district court wrongly included a 10% lack of marketability discount.

We give weight to the district court's findings in dissolution matters, "especially to the extent credibility determinations are involved." *Hansen*, 733 N.W.2d at 690. "We will not disturb the district court's valuation of assets if it is within a permissible range of the evidence." *In re Marriage of Shanks*, 805 N.W.2d 175, 177 (Iowa Ct. App. 2011). In its ruling on David's motion to reconsider, the district court reasoned:

> The Court determined in the Dissolution Decree that the award to Cori of the parties' interest in Tropical Smoothie should include all business assets, including but not limited to, its bank accounts and the advertising reimbursement. The Court excluded in its calculations of the parties' net worth said business assets because those assets are not to be valued separately under the income/market approach used by Mr. Stanley to value Tropical Smoothie. Under the income/market approach, these assets are included in the valuation as they are used to generate the income upon which the valuation is derived. A separate valuation and allocation of the business bank accounts and advertising reimbursement would accordingly be improper.

The district court adopted the expert's business valuation which included all business assets including the Jeep Gladiator and advertising reimbursement. The district court based its decision on its credibility findings, and that valuation was within the permissible range of evidence. So,

we decline to disturb it on appeal. *See In re Marriage of Vieth*, 591 N.W.2d 639, 640 (Iowa Ct. App. 1999) (noting that, even in de novo review, we defer to trial court valuations when accompanied by supporting credibility findings or corroborating evidence).

David also challenges the district court's application of a minimum marketability discount of ten percent to the business value. Both the supreme court and our court have affirmed the application of marketability discounts. *See In re Marriage of Wiedemann*, 402 N.W.2d 744, 746 (Iowa 1987) (affirming 20% discount); *In re Marriage of Steele*, 502 N.W.2d 18, 21 (Iowa Ct. App. 1993) (affirming 20% discount); *In re Marriage of Friest*, No. 18-0337, 2019 WL 1300881, at *9 (Iowa Ct. App. Mar. 20, 2019) (affirming a 30% combined discount for marketability and lack of control). We give much leeway to the district court in valuating closely-held businesses and decline to disturb the application of the marketability discount. *See In re Marriage of Keener*, 728 N.W.2d 188, 194 (Iowa 2007).

We find no reason to disturb the district court's valuation, as it is clearly within the range of permissible evidence. We therefore affirm the valuation.

## PROPERTY DIVISION

Next, David raises three challenges to the court's property division. He argues the district court erred by (1) ordering David to pay the parties' unfiled 2021 and 2022 taxes, (2) attributing a $67,500 income tax distribution as an asset, and (3) considering three loans in the overall property distribution. We address each in turn.

7

## I.    Tax liability

First, David argues the district court erred by ordering him to pay the parties' 2021- and 2022-income taxes. David and Cori owe approximately $24,098 and $51,040 in income taxes for 2021 and 2022, respectively. Based on our review of the record, David received distributions totaling $89,500 from May 2021 to May 2022 to pay the parties' income taxes. Only $22,000 of that money was used to pay the parties' taxes. He testified he used the money to pay personal bills. The district court found this testimony not to be credible and ordered David to pay the unpaid taxes. Because it is based on a credibility finding, we decline to disturb the district court's findings on a cold record. *See Hansen*, 733 N.W.2d at 690.

## II.   Distributions

Second, David argues the district court erred by considering the $67,500 distribution in the property division. David's distributions of $89,500 from the Tropical Smoothie occurred before the parties separated. Only $22,000 was used to pay taxes. David also made withdrawals of $68,000 from his retirement accounts. David again testified that the distributions from the business were used to pay personal bills, but the district court did not find that explanation credible. So, the district court counted the $67,500 distribution as an asset for David and ordered him to pay the parties' taxes. We defer to the district court's credibility finding. *See id*. And we find the approach taken by the district court to be equitable and decline to disturb it.

## III.  Loans

Third, David argues the district court erred when it considered three loans taken out by Cori in the overall property distribution. After the

separation, Cori took out three personal loans of $21,000, $5,000, and $5,950. David argues that there is insufficient evidence regarding the validity of these loans[4] and they should be removed as Cori's debts on the property division. But the district court heard Cori testify regarding these debts and found her credible. Because of that, we defer to the district court's credibility finding.

Accordingly, we affirm the district court's property decision in its entirety.

## IV.     Appellate Attorney Fees

Finally, Cori requests appellate attorney fees. An award of appellate attorney fees is not a matter of right but rests in this court's discretion. *See In re Marriage of Towne*, 966 N.W.2d 668, 680 (Iowa Ct. App. 2021). Our "controlling considerations" are the parties' relative financial positions, but we also consider the merits of the appeal and "whether a party has been obliged to defend the trial court's decision on appeal." *In re Marriage of Michael*, 839 N.W.2d 630, 639 (Iowa 2013). Because Cori was required to defend the appeal and prevailed, we find an award of $7,500 in appellate attorney fees appropriate.

## V.     Conclusion

Upon our review, we find the district court's division of the parties' retirement accounts was equitable, the business valuation was within the

---

[4] David also raises a hearsay challenge to a lease agreement offered by Cori. On our review, the district court admitted the document but relied on Cori's testimony regarding these debts. Because of that, we do not decide the hearsay question.

permissible range of the evidence, and the property division was equitable. Therefore, we affirm and award Cori $7,500 in appellate attorney fees.

**AFFIRMED.**